**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | |
|---|---|
| **JAMES YATES,** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Civil Case No. 1:25-cv-540 |
| | ) |
| **FRANCONNECT, LLC,** | ) |
| | ) |
| <u>Serve Registered Agent</u>: | ) |
| **JAMISON ESTANDIAN** | ) |
| 13865 SUNRISE VALLEY DRIVE | ) |
| HERNDON, VA, 20171 | ) |
| | ) |
| *Defendant*. | ) |

**CIVIL COMPLAINT**

1.  This is an action brought by Plaintiff James "Chris" Yates ("Plaintiff" or "Yates") for

    declaratory, injunctive, and monetary relief against his former employer, Defendant

    FranConnect, LLC ("Defendant" or "FranConnect").

2.  This action alleges discrimination (race and pay) and retaliation in violation of Title VII of

    the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e

    *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Virginia Human Rights Act

    Va. Code § 2.2-3900 *et seq.,* and the Virginia Whistleblower Protection Law ("VWPL"), Va.

    Code § 40.1-27.3.

3.  Plaintiff seeks redress for harm that he suffered as a result of Defendant treating him less

    favorably than his similarly situated non-Black comparators on his sales team.

4.  FranConnect discriminated against Yates based on his race when (1) Yates's new boss, Dan

    Palay ("Palay") took away Yates's lucrative accounts and redistributed them to his white

    peers; Bart Van Dessel, Jessy McGarry, Amanda Griffin, and/or allowed his white peers to

poach his accounts without allowing him to poach theirs; (2) Palay gave Yates the worst of the accounts; (3) FranConnect paid Yates less than at least two of his white peers; (4) Palay held Yates to higher standards than his non-Black peers; (5) Palay placed Yates on three PIPs; and (6) FranConnect replaced him with a white woman.

5.  FranConnect retaliated against Yates based on his protected activity when it (1) proposed to demote him despite his more favorable sales results compared to his non-Black peers; (2) unlawfully fired Yates on January 13, 2025 and no his lesser performing non-Black peers, the same day that he engaged in protected activity yet again; (3) unlawfully denied Yates his commissions; and (4) both paid Yates late and shorted him on his last paycheck.

6.  Yates reported the race discrimination he faced while at FranConnect and was fired and replaced by a white woman, Heather Menster. FranConnect has also not hired another African American sales executive since terminating Yates in January of 2025. He now brings this action seeking justice and recompense for the unlawful discrimination and retaliation FranConnect subjected him to.

## JURISDICTION AND VENUE

7.  This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); and the Virginia Human Rights Act, Va. Code § 2.2-3900 *et seq*. ("VHRA").

8.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action raises allegations under federal laws. The amount in controversy exceeds the jurisdictional minimum amount for this Court.

9.  Venue is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this Complaint took place in Herndon, VA, where Yates worked.

10. At all times relevant to this complaint, Defendant was Plaintiff's employer under Title VII, Section 1981, the VHRA, and the VWPL.

11. In consideration of the foregoing, personal jurisdiction and venue are proper in this Court.

<b><u>PARTIES</u></b>

12. At all times relevant to this complaint, Plaintiff James Yates was employed at the FranConnect. Yates began working for FranConnect in March 2023 as an Enterprise Sales Manager ("ESM") within FranConnect's Sales department. In that role, he was a sales account executive. Yates was the only African American man on his team.

13. Defendant, FranConnect, is a Virginia-based corporation registered to do business in Virginia with offices in Herndon, VA. FranConnect is a SASS platform that helps franchisor manage and grow their franchise network for sales, operations, and performance tracking.

<b><u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u></b>

14. On or about December 11, 2024, Yates filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). His charge was filed within 180 days after one or more of the alleged unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 had occurred and was cross-filed with the Commonwealth of Virginia Office of Civil Rights.

15. Plaintiff requested and received a Notice of Right to Sue from the EEOC on March 4, 2025. This notice gave Plaintiff 90 days from the receipt of the notice to file his Complaint related to his Title VII claims, which is on or before June 2, 2025. Yates has exhausted all administrative remedies required to bring this instant complaint.

## FACTS

**Yates's Favorable Performance**

16. To provide context for Yates's professionalism, success, experience and understanding of sales, at the time of termination, Yates had been a Proven Sales Producer for 10+ years prior to taking the role as Enterprise Sales Manager ("ESM") within FranConnect's Sales department in March 2023.

17. He was consistently recognized as a top-performing sales professional across multiple organizations, earning awards for exceeding sales targets, driving revenue growth, and building lasting client relationships.

18. Shortly after FranConnect hired Yates in March 2023, he was placed on a standard six-month ramping period, where he built strong relationships with several new logo accounts.

19. After completing the ramping period, Yates was ranked as the #1 seller for FranConnect in Q4 2023 due to him closing $46,373 in sales in Q4 2023. Not only that, but he was also the #1 producing sales representative for October and December in 2023.

20. He finished 2024 as the #3 top-performing sales representative overall (out of 21 sales producers in total) with $43,000 in closed deals.

21. He consistently received positive feedback on performance from colleagues, leadership, and clients.

22. Yates was a High-Impact Revenue Generator who successfully sold over $1.07 million in annual recurring revenue for FranConnect, demonstrating a strong ability to drive sustainable business growth. Yates also closed one of the largest deals in company history, SnowFox.

23. He received recognition from John Stopper (FranConnect's Interim Chief Revenue Officer ("CRO") & Sales Consultant) who stated in a LinkedIn post, *"[Mr. Yates] finished the year*

4

*as one of the top-producing reps in the company, closing some of the largest deals in company history."*

24.  Yates was a value-adding team member within FranConnect's Sales department yet he persistently faced discriminatory treatment from Palay and the company's CRO, Austen Asadorian.

**I.    Discrimination - FranConnect subjected Yates to lesser terms and conditions of employment than his non-African American Counterparts, as follows:**

A. *FranConnect Manipulated Yates's Sales by Reassigning His Lucrative Accounts to His White Counterparts Without Explanation*

25.    The discrimination that Yates faced at FranConnect began when Palay became his manager in January 2024. Yates was the only African American on his team.

26.    The other sales executives who were supervised by Palay were A.J Griffin, Dallas Henderson, Greg Barnes, Rob Helck, Danny Chapman, Preston Hall, Amy Volatile, Fernando Gomez, Jessy McGarry, Ali Muskett, Alex Miller, Barrett Scully, and James Manning, and were all non-Black.

27.    Palay told Yates on January 12, 2024, that he was reassigning eight of his new logo accounts, which he had developed during his ramping period, to Bart Van Dessel a non-Black colleague who was an enterprise account manager.

28.    Enterprise/Mid Market account managers are not allowed to work new logo opportunities per FranConnect's established SOPs.

29.     Van Dessel's role was focused on upselling existing accounts, not new logos, making this reassignment unfair.  Yates was the only sales representative who had eight of his accounts removed out of his team of 13 sales peers. This raised his concerns about unequal treatment and bias due to his race.

30. Yates immediately requested a meeting with Palay and Asadorian, to understand why his accounts were reassigned. Yates expressed his concern that Palay's decision was placing him at a disadvantage.

31. Palay finally met with Yates a few days later, on January 17, 2024, where Palay informed him that the accounts would remain with Van Dessel. He did not provide a valid explanation.

32. FranConnect's sales organization is divided into two key segments: **Enterprise Sales:** Focused on businesses with **300+ locations**, typically larger franchise brands requiring advanced franchise management solutions, and **Mid-Market Sales:** Targeting businesses with **100-300 locations**, offering scalable solutions to support growing franchise networks.

33. Enterprise Sales accounts were given to Enterprise Sales Representatives, whereas Mid-Market accounts were given to Mid-Market Sales Representatives.

34. As just one example, a high-value lead, Fantastic Sams (300+ locations), was initially assigned to Yates as an Enterprise Account Executive.

35. Yet on February 15, 2024, Palay reassigned the Fantastic Sams account to his white colleague Jessy McGarry, a Mid-Market Account Executive, whose role did not include Enterprise accounts.

36. Yates emailed Palay pointing out that he was put at a disadvantage when contrary policy, he allowed Mid-Market representatives to receive Enterprise leads. This move was both unfair and discriminatory, as McGarry received preferential treatment because of her race.

37. McGarry ultimately closed the deal, which deprived Yates of a major account opportunity and hindered his ability to meet his enterprise sales quotas.

38. On March 13, 2024, another lucrative Enterprise Account, Foodtastic (1,200+ locations), was given to McGarry.  McGarry was given preferential treatment, as he was permitted to work both mid-market and enterprise accounts like McGarry despite Yates having requested this specific account be assigned to him as he had a larger quota and was enterprise account executive.

39. When Yates addressed this with Palay, he justified keeping the account with McGarry by saying that he decided to allow her to work on both Enterprise and Mid-Market accounts which was not allowed per company standard operating procedures ("SOPs").

40. On October 1, 2024, Palay allowed a white colleague, Amanda Griffin, to poach Yates' lucrative accounts. Yates learned of this when Griffin informed him that Palay "allowed her" to review his accounts and select which ones she wanted to work on.

41. Shortly after, Palay inexplicably reassigned several of Yates' accounts (Aurify Brands, Charleys Philly Steaks, Gong Cha, Marco's Pizza, RSM US LLP, SSCP Management, Inc., Thrive Restaurant Group, Wendy's, Wow Bao) to her without justification, and Yates was assigned a list of less promising accounts, many of which were cold inbound leads with no active opportunities.

42. This reassignment was not based on performance or fairness— Griffin was given preferential treatment at Yates' expense. Yet, even despite Palay giving her preferential treatment and advantage, Griffin *still had not made a single sale* as of April 2024 and January 13, 2025, when Yates was fired and she remained employed with FranConnect.

B.  *FranConnect Unlawfully Excluded Yates from Keys Sales Meetings with His Client*

43. In March 2024, Yates was intentionally excluded from a crucial meeting with his client, Phoenix Brands, that was planning on making a buying decision. This was odd given that

7

Yates originally set up the meeting with the Phoenix Brands executives, Scott Oaks and Kevin Loung as their sales representative who had worked with them directly through the entire process and had already successfully sold them business.

44. Palay attended the meeting with John Stopper, a white male.

45. John Stopper confirmed in writing that Palay deliberately left him out of the meeting.

46. In justifying his decision to exclude Yates, Palay said, "*We would present better as an organization if you weren't on the meeting*," which implies a bias-driven decision rather than a legitimate business reason.

47. No other sales representatives at FranConnect were excluded from such meetings with their clients—this was not standard practice at all and was fraught with race bias.

48. This exclusion directly impacted Yates' ability to contribute and build client relationships.

*49.* This exclusion directly impacted Yates' ability to contribute and build client relationships by selling more services and products.

C.  *FranConnect Unlawfully Paid Yates Less Than His White Counterparts*

50.  During a dinner at Bones restaurant in Atlanta on June 18, 2024, two of Yates' white colleagues—Andrew Masterson and Amanda Griffin, both Enterprise Account Managers— mentioned that they were earning significantly more base salary than he was in the same role. This surprised Yates given that they were both less tenured at FranConnect. Yates was hired in March 2023, Masterson was hired in December of 2023, and Griffin was hired in April of 2024.

> ### D. _FranConnect Unlawfully Disciplined Yates in Comparison to His White Counterparts_

51. Per FranConnect's written policy that Asadorian emailed out to all sales employees on February 15, 2024, any representative performing under 50% of quota is placed on a Performance Improvement Policy ("PIP"), and any representative who fails to achieve at least 80% of their quota the next month is terminated. This policy should not have been subjectively enforced to Yates disadvantage but was.

52. On June 10, 2024, Palay placed Yates on a PIP requiring him to:

> ✅ Close **$13,000 in new business**.
> ✅ Secure **a new logo account**.
> ✅ Generate **four new leads**.
> ✅ Be **present in the office once per week**.
> ✅ Maintain **CRM hygiene**.

_53._ The final chart of sales numbers for FY 2024 for all sales representatives show Yates as the #3 in top sales producer. Many sales representatives were below Yates but were not placed on PIPs per FranConnect's PIP policy.

54. Yates' colleagues were in disbelief when they learned that he was placed on a PIP given his well-known record sales.

55. Yates learned of the racial disparity in the PIP enforcement when his white counterpart, Amy reached out to him in August 2024. She had significantly lower sales than Yates but informed him that she was not placed on a PIP.

56. Yates successfully met and exceeded the PIP benchmarks by selling $13,500 in MRR by August 2024. Stephanie Opoku, the Senior Vice President of People[1] acknowledged his successful completion of the PIP in an email. Despite this, Palay unexpectedly placed Yates

---

[1] Opoku was the only HR person in the entire company of approximately 300 employees.

on a second PIP, followed by a third PIP between June and December 2024, with unattainable goals designed to set him up for failure.

*57.* The inexplicable extensions of the original PIP that he met and exceeded caused Yates undue stress and further affected his ability to meet quotas, while white colleagues with poorer performance were not subjected to the same harsh treatment. This is disparate discipline due to his race.

E. *Asadorian's Racial Bias Against Yates*

58. On October 9, 2024, Asadorian told Yates that the franchising community was an "*exclusive group*," implying that certain individuals like Yates, may not be viewed as "*fitting into*" that group.

59. Asadorian also referenced Yates' first PIP, stating that he "struggle[d] with building strong relationships with key stakeholders" to understand deal dynamics. He specifically mentioned Scott Oaks with the Comfort Keepers account, Kevin Longe and Greg Longe with the Phoenix Brands account, and Emma Deabill with the Snowfox account.

60. Asadorian's comment was contrary to both facts and reality and was contradicted by Yates' performance, as he had already closed deals with all four of these accounts before Asadorian made that false statement. This comment showed that despite Yates' real results, Asadorian and Palay continued their pattern of discrimination against him as they viewed him as not "fitting in" to the exclusive group of white stakeholders. In particular, as referenced above, Yates closed the Snowfox deal, one of the largest ones closed in FranConnect's company history.

F.  *FranConnect's Discriminatory Enforcement of the Remote Work Policy*

61.    On January 1, 2024, HR implemented a return-to-office policy that Employees living within 40 miles of the office must come in three days per week. Employees living 41-65 miles away are required to come in once per week. This policy should not have been subjectively enforced to Yates disadvantage but was.

62.    Yates lived <u>50 miles away</u> and complied, making a four-hour round-trip commute every Wednesday.

63. However, his white colleague, McGarry, who lived <u>under 30 miles away</u>, was allowed to work remotely full-time.

64. Another colleague, Daniel Chapman, admitted on November 11, 2024 that he rarely came into the office.

65. Yet only Yates had his coming into the office referenced in his (first and second PI).

G.  *FranConnect Deprived Yates of His Commissions*

66. Yates had already put deals in the pipeline in his prior accounts. FranConnect did not provide Yates the commission payments for those deals, e.g. Phoenix Brands. He estimates that he should have been paid approximately $89,468 in commissions for deals that were forecasted at the highest probability to close by the end of FY 2025.

67. Yates believes that Griffin, McGarry and Van Dessel profited from the commissions that he contributed to in his prior accounts.

68. By his calculation, business that his colleagues closed in his prior accounts was at 90%.

II.    **Retaliation - FranConnect retaliated against Yates for his protected activity, as follows:**

69. On **December 2, 2024**, Yates lodged his first Complaint with HR to report discrimination, as follows:

- "Discriminatory account reassignments.
- I was subjected to high Performance expectations being applied inconsistently in contrast to my white collogues.
  After my December 2nd  race discrimination complaint, my manager Palay began inexplicably canceling our 1-on-1 meetings."

70.    Yates met with HR on **December 5, 2025**. During that meeting, Opoku apologized to Yates for the discrimination he had faced, stated she would conduct an internal investigation, and offered him a demotion as part of her response.

71. On **December 11, 2024**, Yates filed a race and pay discrimination and retaliation complaint with the EEOC.

72. HR called another meeting with Yates for **December 16, 2025**, and informed him that their attorney had already met with HR and that they planned to discuss the allegations in his complaint and next steps during that next meeting.

73. On **December 16th**, Yates met with Opoku where she told him the HR Investigation findings. She confirmed inconsistencies in relevant processes; e.g. confirming Palay was not following company policy in regard to Yates in how and when his accounts were reassigned in contrast to his white peers.  Notably, Palay's timing in reassigning Yates' accounts was unusual as sales accounts are typically reassigned at the end of the sales year, which would have been in the January time frame, not mid-year like what Palay did in Yates' case. Opoku acknowledged that Yates was not able to work his accounts for the entire sales year in contrast to his non-Black colleagues who were able to work their accounts for the entire sales year.

74. Opoku also shared planned 2025 policy changes, to include the following:

- A new account reassignment policy to prevent unfair transfers.

- Managerial training to address unconscious bias. (This training was held in January 2025).

12

- Updated PIP (Performance Improvement Plan) criteria to differentiate sales roles

75. Lastly, Opoku apologized to Yates. She told him that they would not discipline Palay but instead, recommended continued "coaching" for him.

76. On **December 30, 2024**, instead of addressing the discrimination, FranConnect retaliated by offering him two options 15 days later:

- Move to a lesser Enterprise Account Manager role on January 12, 2025, with significantly lower earning potential (despite the same base salary), as the average deal size for Enterprise new logo is $8.1K, compared to Enterprise upsell at $2.6K, or
- Take a severance package of only 2 months of salary and 2 months of COBRA

77. FranConnect provided one more offer but refused to negotiate a fair compensation package to the offset lost earnings Yates would have in the demoted role.

78. Then on **January 9, 2025**, FranConnect escalated their retaliation after Yates declined the 2-month severance offer given that he knew he had earned the company close to $1.5 million in annual revenue and had been unlawfully treated by Palay putting him on not one but three PIPs whilst not placing his non-Black counterparts who were less successful in their sales on a PIP.

79. On **January 13, 2025**, Yates communicated to Opoku the reasons why he could not accept the lesser position they had offered him as a so-called lateral position only after he engaged in protected activity. Yates also informed her that since filing his EEOC claim, he had retaliated against with heightened performance monitoring, false allegations being made about his sales metrics, and the ultimatum FranConnect gave him to either accept the lesser role or face termination. This raised serious concerns for him about FranConnect's

commitment to treat him equitably and reinforced his belief that he had made the right decision in filing an EEOC complaint to pursue his civil rights.

80. In response to Yates' email, *that same day*, Opoku emailed him stating, *"Given that you did not accept the lateral role offering, we are terminating your employment effective immediately."*

81. Yates was fired for declining the demotion after reporting discrimination, not for his performance.

82. Even after Yates was fired, he noticed that FranConnect had inexplicably paid him late and had also shorted him on his last paycheck that he received on February 14, 2025, instead of on January 31, 2025, by $7,682. He believes FranConnect did this in retaliation for his ongoing protected activity.

83. He later learned that FranConnect replaced him with a white woman, Heather Menster.

**No Legitimate Business Interest in Terminating Yates's Employment and Hiring a White Woman to Replace Him**

84. Yates was an excellent employee and had a track record of success in sales even prior to joining FranConnect.

85. He was a top sales producer yet, FranConnect put him on three PIPs and then fired him, the only Black man on his team, for the pretextual reason of him failing to meet his artificially high annual sales quota for FY 2024 after they had given away his lucrative accounts to his white counterparts.

86. There was no legitimate business reason for FranConnect to not apply their PIP policy for Yates' lesser performing non-Black peers who were not placed on PIPs, offered demotions, fired or closed-out from other internal opportunities.

87.    In this way, Yates, the only African American on his team, was treated demonstrably worse than his white comparators, Amy Volatile, Jessy McGarry and Amanda Griffin, as described above, and in violation of FranConnect's own policies.

88.    But for Yates being a Black man in an ESM position, he would not have been stripped of his sales opportunities, put on three PIPs, and fired, and replaced with a woman.

89.    As one of the highest performing ESMs on his team, there was no legitimate business reason why FranConnect deprived Yates of the opportunity to succeed as a sales representative by holding him to higher standards than his non-Black peers, taking away his lucrative sales accounts, disparately disciplining him, and depriving him of the financial commissions that he had worked hard for.  Asadorian and Palay set Yates up for failure.

**Damages**

90.    Yates is disappointed at how FranConnect has handled these matters and takes these matters seriously, given the harm that he suffered professionally, physically, financially, and emotionally, due to the unlawful race discrimination and retaliation he faced, which ended his career with FranConnect, leaving him with no salary or benefits to provide for his family of five.

91.    Yates would like to put this matter behind him and move on with his life, but he is a changed man who has suffered emotionally, and financially due to the unlawful discrimination and retaliation he endured at FranConnect.

92.    His being treated less favorably than his white colleagues made him feel isolated and undervalued and less than.

93.    The uncertainty of losing his job, financial instability, and dealing with workplace discrimination has caused him significant emotional distress. Constantly having to advocate for his fair treatment, being placed on multiple PIPs despite top performance, and experiencing

repeated retaliation was draining and defeating. Being unfairly targeted and mischaracterized and defamed as a poor performer, despite evidence to the contrary, has impacted his confidence in his career and caused him anxiety about his career and future stability. He is anxious about being able to find a comparable job, dealing with legal matters, and financial instability.

94.    The stress from wrongful termination and being the only Black ESM to be fired despite being a top sales producer, and

95.    As a result of FranConnect's unlawful actions, Yates was harmed financially, as he lost his pay, commissions, and has been accruing attorneys' fees and expenses to pursue his legal rights. The financial loss has affected his family and his ability to plan for the future.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND SECTION 1981

96.    The foregoing paragraphs are incorporated herein and made an integral part hereof.

97. Under Title VII and Section 1981, it is an unlawful employment practice for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of an individual's race.

98. Plaintiff was fully qualified to perform his position as an Sales Account Executive and had performed the same or better than his similarly situated white comparators.

99. Despite his qualifications, Defendant discriminated against Plaintiff in violation of Title VII & 1981 by subjecting him to less favorable treatment on the basis of his race.

100.    Specifically, FranConnect subjected Plaintiff to discriminatory race bias when (1) Palay took away Yates's lucrative accounts and redistributed them to his white peers; Bart Van Dessel, Jessy McGarry, Amanda Griffin, and/or allowed his white peers to poach his accounts without allowing him to poach theirs; (2) Palay gave Yates the worst accounts of the accounts; (3) FranConnect paid Yates less than at least two of his white peers; (4) Palay

held Yates to higher standards than his non-Black peers; (5) Palay placed Yates on three PIPs; and (6) FranConnect replaced him with a white woman. These were all adverse employment actions.

101.    Despite his qualifications, Palay treated only his Black sales representatives, Yates, less favorably than he treated all his other white sales representatives on his team.

102.    Defendant's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's statutory rights.

103.    As a direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered a loss in wages and benefits, diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

104.    By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of Title VII and Section 1981, including an award of punitive damages. Reasonable attorneys' fees should be awarded under both Title VII and Section 1981.

## COUNT II: RACE DISCRIMINATION IN VIOLATION OF THE VHRA

105.    The foregoing paragraphs are incorporated herein and made an integral part hereof.

106.    Under the Virginia Human Rights Act, it is an unlawful employment practice for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment because of an individual's race. Va. Code § 2.2-3900 *et seq.*

107.    Plaintiff was fully qualified to perform his position as an ESM and had performed the same or better than his similarly situated white comparators.

108.    Despite his qualifications, Defendant discriminated against Plaintiff in violation of the Virginia Human Rights Act by subjecting him to less favorable treatment on the basis of his race.

109.    Specifically, FranConnect subjected Plaintiff to discriminatory race bias when (1) Palay took away Yates's lucrative accounts and redistributed them to his white peers; Bart Van Dessel, Jessy McGarry, Amanda Griffin, and/or allowed his white peers to poach his accounts without allowing him to poach theirs; (2) Palay gave Yates the worst accounts of the accounts; (3) FranConnect paid Yates less than at least two of his white peers; (4) Palay held Yates to higher standards than his non-Black peers; (5) Palay placed Yates on three PIPs; and (6) FranConnect replaced him with a white woman. These were all adverse employment actions.

110.    Despite his qualifications, Palay treated only his black sales representatives, Yates, less favorably than he treated all his other white sales representatives on his team.

111.    Defendant's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's statutory rights.

112.    As a direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered a loss in wages and benefits, diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

113.    By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of the VHRA, including an award of punitive damages. Reasonable attorneys' fees should be awarded under the VHRA.

## COUNT III: PAY DISCRIMINATION IN VIOLATION OF THE TITLE VII
## AND SECTION 1981

114.    The foregoing paragraphs are incorporated herein and made an integral part hereof.

115.    Defendant has discriminated against Plaintiff in violation of Title VII and Section 1981 by subjecting him to unequal pay on the basis of sex, as described in detail above.

116.    Defendant has discriminated against Plaintiff by treating him differently from and less preferably than similarly situated non-Black employees, Masterman and Griffin who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions. Defendant also discriminated against him by subjecting him to less pay and benefits in violation of Title VII and Section 1981.

117.    As a direct and proximate result of Defendant's willful, knowing and intentional discrimination, acts or omissions, as described herein, Plaintiff has suffered harm, including but not limited to, lost wages, lost benefits, diminished future earning capacity, and other pecuniary and non-pecuniary losses.

118.    Plaintiff should be awarded all legal and equitable remedies, including underpaid wages, compensatory or punitive damages for all willful violations and reasonable attorneys' fees under Title VII and Section 1981.

119.    Plaintiff should be awarded the entire amount of underpayment, interest, costs, reasonable attorneys' fees and other statutory penalties or relief as may be allowed by the Court pursuant to Title VII and Section 1981.

## COUNT IV: RETALIATION IN VIOLATION OF TITLE VII
## AND SECTION 1981

120.    The foregoing paragraphs are incorporated herein and made an integral part hereof.

121.    Under Title VII and Section 1981, it is an unlawful employment practice for an employer

to retaliate against any individual by taking an adverse action because of the individual's opposition to any practice made illegal by Title VII and Section 1981.

122.    Plaintiff engaged in protected activity and Defendant was aware of his protected activity, specially that Plaintiff had complained about race discrimination in the workplace, as described above in ¶¶69-83.

123.    Defendant subjected Plaintiff to retaliation for him engaging in protected activity, as described in detail above in ¶¶69-83. FranConnect retaliated against Yates based on his protected activity when it (1) proposed to demote him despite his more favorable sales results compared to his non-Black peers; (2) unlawfully fired Yates on January 13, 2025 and not his lesser performing non-Black peers, the same day that he engaged in protected activity yet again; (3) unlawfully denied Yates his commissions; and (4) both paid Yates late and shorted him on his last paycheck. These were all adverse employment actions.

124.    Plaintiff was fully qualified to perform his position as an ESM and had performed successfully in his role.

125.    FranConnect's conduct in disparately disciplining Yates would likely dissuade a reasonable worker from raising race disparity complaints against the company.

126.    FranConnect's conduct of wrongfully placing Yates on PIPs; unlawfully firing Yates on January 13, 2025, the same day that he had engaged in protected activity again; replacing Yates with a white woman; and denying Yates his commissions, was done in retaliation for Plaintiff's opposition to practices made illegal under Title VII and Section 1981.

127.    Defendant's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's statutory rights.

128.    As a direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered a loss in wages and benefits, diminished future earning capacity,

emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

129.    By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of the anti-retaliation provision of Title VII and Section 1981, including an award of punitive damages. Reasonable attorneys' fees should be awarded, as well.

## COUNT V: RETALIATION IN VIOLATION OF THE VHRA

130.    The foregoing paragraphs are incorporated herein and made an integral part hereof.

131.    Under the VHRA, it is an unlawful employment practice for an employer to retaliate against any individual by taking an adverse action because of the individual's opposition to any practice made illegal by the VHRA.

132.    Plaintiff engaged in protected activity and Defendant was aware of his protected activity, specially that Plaintiff had complained about race discrimination in the workplace, as described above in ¶¶69-83.

133.    Defendant subjected Plaintiff to retaliation for him engaging in protected activity, as described in detail above in ¶¶69-83. FranConnect retaliated against Yates based on his protected activity when it (1) proposed to demote him despite his more favorable sales results compared to his non-Black peers; (2) unlawfully fired Yates on January 13, 2025 and not his lesser performing non-Black peers, the same day that he engaged in protected activity yet again; (3) unlawfully denied Yates his commissions; and (4) both paid Yates late and shorted him on his last paycheck. These were all adverse employment actions.

134.    Plaintiff was fully qualified to perform his position as an ESM and had performed successfully in his role.

135.    FranConnect's conduct in disparately disciplining Yates would likely dissuade a reasonable worker from raising race disparity complaints against the company.

136.    FranConnect's conduct of wrongfully placing Yates on PIPs; unlawfully firing Yates on January 13, 2025, the same day that he had engaged in protected activity again; replacing Yates with a white woman; and denying Yates his commissions, was done in retaliation for Plaintiff's opposition to practices made illegal under the VHRA.

137.    Defendant's conduct was intentional, malicious, and recklessly indifferent to Plaintiff's statutory rights.

138.    As a direct and proximate result of the acts and omissions of Defendant, as described above, Plaintiff suffered a loss in wages and benefits, diminished future earning capacity, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

139.    By reason of Defendant's discrimination, Plaintiff is entitled to all remedies available for violations of the anti-retaliation provision of the VHRA, including an award of punitive damages. Reasonable attorneys' fees should be awarded, as well.

## COUNT VI: RETALIATION IN VIOLATION OF THE VWPL

140.    The foregoing paragraphs are incorporated herein and made an integral part hereof.

141.    Plaintiff engaged in protected activity by making good faith reports of violations of Title VII, Section 1981, and the VHRA when he reported Palay's unlawful behavior to Opoku and the EEOC.

142.    Defendant responded to Plaintiff's good faith reports by terminating his employment.

143.    As a result of Defendant's actions, Plaintiff has been damaged, as described in detail, above.

## PRAYER FOR RELIEF

**NOW, WHEREFORE,** Plaintiff prays this Court to:

a.  Enter judgment in his favor against Defendant;

b.  Declare that the conduct of Defendant is a willful violation of the Plaintiff's rights as secured by the Title VII, Section 1981, the VHRA, and VWPL;

c.  Award Yates punitive damages in an amount to be shown at trial;

d.  Award Yates full back pay including salary, benefits, entitlements, loss of professional status and career-enhancing opportunities, bonuses, cash awards, loss of retirement savings and benefits, and other remuneration and privileges of employment retroactive to the date of any unlawful action found to have occurred in this case;

e.  Award Yates front pay;

f.  Award Yates pecuniary and out-of-pocket expenses;

g.  Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses incurred by Yates as a result of Defendant's actions and inactions, as well as pre- and post-judgment interest; and

h.  Grant Yates such other and further relief as justice may require and are within the equitable powers for this honorable Court.

**JURY DEMAND**

Plaintiff seeks trial by jury on all matters and issues that can be so tried.


Dated: March 27, 2025                        Respectfully Submitted,

                                             **JAMES YATES**
                                             By Counsel:


                                              _/s/ Monique A. Miles_____
                                             Monique A. Miles, Esq.
                                             Va Bar No. 78828
                                             Old Towne Associates, P.C.

201 N. Union Street, Ste. 110
Alexandria, VA 22314
Phone: 703-519-6810
mmiles@oldtowneassociates.com
http://oldtowneassociates.com

*Counsel for Plaintiff*