IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAMES YATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:25-cv-00540-LMB-LRV |
| ) | |
| FRANCONNECT, LLC, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court is defendant FranConnect, LLC's ("defendant" or "FranConnect") Motion to Dismiss Counts I through V of a six-count Complaint plaintiff James Yates ("plaintiff" or "Yates") has filed against his former employer.[1] Specifically, in the Counts at issue Yates has alleged being the victim of race discrimination in violation of Title VII and § 1981 (Count I); race discrimination in violation of the Virginia Human Rights Act ("VHRA") (Count II); pay discrimination in violation of Title VII and § 1981 (Count III); retaliation in violation of Title VII and § 1981 (Count IV); and retaliation in violation of the VHRA (Count V). The motion has been fully briefed and oral argument has been waived. For the reasons that follow, defendant's Motion to Dismiss will be granted in part and denied in part.

I.

The Complaint alleges the following facts. In March 2023, FranConnect hired Yates as an Enterprise Sales Manager. Compl. ¶ 13. Yates was the only African American member of his team. Id. ¶ 25. From March 2023 until a new manager began supervising plaintiff's team in

---

[1] Defendant has not moved to dismiss Count VI, which alleges retaliation in violation of the Virginia Whistleblower Protection Law.

January 2024, plaintiff consistently received positive feedback. Id. ¶¶ 17–25. Starting on January 12, 2024 and continuing over the next several months, plaintiff's new manager, Dan Palay ("Palay"), reassigned several of plaintiff's accounts to other members of the team, most of whom held lower positions than plaintiff. Id. ¶¶ 27, 35, 38, 40. Plaintiff confronted Palay about the decision to reassign his accounts, but Palay did not provide an explanation. Id. ¶¶ 36, 39. In March 2024, plaintiff was excluded from a crucial meeting with one of his clients. Palay told plaintiff that "[w]e would present better as an organization if you weren't on the meeting." Id. ¶ 46.

On June 10, 2024, Palay placed plaintiff on a performance improvement plan ("PIP") requiring him to close $13,000 in new business, secure a new account, generate four new leads, and be present in the office once per week in accordance with company policy. Id. ¶ 52. Many sales representative were "below Yates but were not placed on PIPs." Id. ¶ 53. By August 2024, Yates exceeded the PIP benchmark, and the Senior Vice President of People ("HR") acknowledged his successful completion of the PIP. Id. ¶ 56. Despite this, Palay placed plaintiff on two more PIPs—"with unattainable goals designed to set him up for failure"—between June and December 2024. Id. The Complaint alleges that "white colleagues with poorer performance were not subject to the same harsh treatment." Id. ¶ 57.

On October 1, 2024, Palay allowed a white colleague, Amanda Griffin, to review plaintiff's accounts and select which ones she wanted to work on. The Complaint describes this as "poaching" plaintiff's accounts. Palay reassigned at least nine accounts to her, whereas Yates was assigned a list of less promising accounts. Despite receiving preferential treatment, Griffin "had not made a single sale as of April 2024 and January 13, 2025, when Yates was fired yet Griffin remained employed with FranConnect." Id. ¶ 42.

2

On October 9, 2024, FranConnect's Chief Revenue Officer told Yates that the franchising community was an "exclusive group," allegedly implying that Yates may not be viewed as "fitting into" that group, id. ¶ 58, and that Yates "struggle[d] with building strong relationships with key stakeholders" to understand deal dynamics, id. ¶ 59.

On December 2, 2024, Yates lodged his first complaint with HR, alleging "discriminatory account reassignments. I was subjected to high Performance expectations being applied inconsistently in contrast to my white colleagues. After my December 2nd race discrimination complaint, my manager Palay began inexplicably canceling our 1-on-1 meetings." Id. ¶ 69. On December 5, 2024, Yates met with an HR representative, who apologized to him for the discrimination he had faced, stated she would conduct an internal investigation, but "offered him a demotion as part of her response." Id. ¶ 70.

On December 11, 2024, Yates filed a race and pay discrimination and retaliation complaint with the EEOC and the Virginia Office of Civil Rights. Id. ¶¶ 14, 71. On December 16, 2024, HR called another meeting with Yates and informed him that FranConnect's attorney had already met with HR, and that HR planned to discuss the allegations and next steps at this meeting. Id. ¶ 72. In this meeting, HR confirmed that Palay did not follow company policy in regard to reassigning Yates's accounts. Id. ¶ 73. HR also shared planned policy changes for 2025 that would establish a new account reassignment policy, required managerial training to address unconscious bias, and updated PIP criteria that differentiated between sales roles. HR apologized to Yates and said they would recommend continued coaching for Palay. Id. ¶¶ 73–75.

On December 30, 2024, FranConnect offered plaintiff two options: accept a demotion on January 12, 2025 to Enterprise Account Manager (rather than the Enterprise Sales Manager

position he had held), which the Complaint describes as having a lower earning potential, or take a two-months' salary plus two-months COBRA severance package. Id. ¶ 76. "FranConnect provided one more offer but refused to negotiate a fair compensation package to the [sic] offset lost earnings Yates would have in the demoted role." Id. ¶ 77. The Complaint does not allege what the third offer entailed.

On January 13, 2025, in a detailed email to HR, Yates declined the severance package. Id. ¶ 78. That same day, HR replied to his email stating, "Given that you did not accept the lateral role offering, we are terminating your employment effective immediately." Id. ¶ 80. FranConnect then paid Yates late, on February 14, 2025 instead of January 31, 2025, and shorted his pay by $7,682. Id. ¶ 82. FranConnect hired a white woman to replace him. Id. ¶ 83. Without specifying the time period, the Complaint alleges that FranConnect did not provide Yates the commission payments for deals he had put "in the pipeline in his prior accounts" that had been transferred to other representatives, totaling $89,468 in unpaid commissions. Id. ¶ 66.

II.

At the motion to dismiss stage, a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Sturgill v. Norfolk Southern Ry. Co., 391 F. Supp. 3d 598, 602 (E.D. Va. 2019). Rule 12(b)(6) requires that a complaint be dismissed when it does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Claims of racial discrimination in employment under § 1981 and the VHRA are evaluated under the Title VII framework. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); Lundberg v. Delta Response Team, LLC, 2025 WL 364452, at *7 (W.D. Va 2025)

4

(analyzing a VHRA claim "under the same framework as the Title VII claim"). A plaintiff may establish liability for race discrimination by either (1) "demonstrating through direct or circumstantial evidence that his race was a motivating factor in the employer's adverse employment action" or (2) relying on the burden shifting scheme set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Holland v. Wash. Homes, Inc., 487 F.3d 208, 213–14 (4th Cir. 2007).

To allege a claim under McDonnell Douglas, a complaint must allege facts showing that the plaintiff: (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was performing his job satisfactorily, and (4) the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." Adams v. Tr. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). Although a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII, § 1981, or VHRA complaint is still subject to dismissal if it does not meet the plausibility standard under Twombly and Iqbal. See McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584–85 (4th Cir. 2015).

To allege a Title VII or § 1981 pay discrimination claim, a complaint must allege facts showing that the plaintiff: (1) is a member of a protected class, (2) is as qualified as employees not of the protected class, and (3) was paid less than other comparably qualified employees. Trusty v. Maryland, 28 Fed. App'x 327, 329 (4th Cir. 2002) (citing Bazemore v. Friday, 751 F.2d 662, 670 (4th Cir.1984)). When a complaint does not identify a genuinely "similarly situated" employee, the claim fails. Id.; see also Khan v. Jenkins, 905 F.2d 1530 (4th Cir. 1990) (concluding that one professor/colleague with more education than the plaintiff and another

5

holding a higher-level position were not similarly situated to the plaintiff due to these differences).

The Complaint alleges only indirect evidence of race discrimination. Although the allegations are thin at times, the Complaint adequately alleges that plaintiff, the only Black member of his sales team, was treated worse than his non-Black colleagues. Plaintiff began experiencing unique, negative treatment almost immediately once Palay became his supervisor. The Complaint also alleges that plaintiff's job performance was satisfactory and did not justify his accounts being reassigned—nor was he provided any explanation for such adverse treatment—and that his lower-performing non-Black coworkers did not have their accounts reassigned. It is, therefore, plausible that plaintiff's accounts being reassigned adversely affected his pay. For these reasons, the Complaint alleges sufficient facts to survive defendant's Motion to Dismiss as to the race discrimination claims under Title VII, § 1981, and the VHRA, and the pay discrimination claims under Title VII and § 1981; however, because plaintiff had not exhausted the required administrative procedures for his retaliation claims by the time he filed the Complaint, those claims must be dismissed without prejudice.[2]

For all these reasons, defendant's Motion to Dismiss [Dkt. No. 6] is GRANTED IN PART as to the two retaliation counts (IV and V), DENIED IN PART as to Counts I–III, and it is hereby

ORDERED that plaintiff has fourteen (14) days in which to file an amended complaint to which he must attach his most recent complaints filed with the EEOC and the Virginia Office of

---

[2] Most of the retaliatory actions alleged in the Complaint occurred after December 11, 2024, the date plaintiff filed his first complaints with the EEOC and the Virginia Office of Civil Rights. Plaintiff attempted to cure this procedural defect by filing a retaliation claim with the EEOC and receiving a new Notice of Right to Sue after defendant filed its Motion to Dismiss, but this belated filing did not render the allegations in the Complaint timely.

Civil Rights addressing the retaliation claims and any right to sue letters plaintiff has received from those agencies. Because Counts I–III and VI remain, a scheduling order will be issued forthwith.

The parties are strongly encouraged, before incurring the extensive costs of discovery, to schedule a settlement conference or otherwise engage in mediation efforts.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 10th day of July, 2025.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

7