```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION


--------------------------x
JAMES YATES,                   :      Civil Action No.:
                               :      1:25-cv-540
            Plaintiff,         :
      versus                   :      Friday, April 10, 2026
                               :      Alexandria, Virginia
FRANCONNECT, LLC,              :
                               :      Pages 1-17
            Defendant.         :
--------------------------x
```

        The above-entitled motions hearing was heard before the Honorable Leonie M. Brinkema, United States District Judge. This proceeding commenced at 10:02 a.m.

A P P E A R A N C E S:

FOR THE PLAINTIFF:     MONIQUE MILES, ESQUIRE
                       OLD TOWNE ASSOCIATES, P.C.
                       201 N. Union Street
                       Suite 110
                       Alexandria, Virginia  22314
                       (703) 994-9367

FOR THE DEFENDANT:     KRAIG LONG, ESQUIRE
                       SARAH STEINBERG, ESQUIRE
                       NELSON MULLINS RILEY
                       & SCARBOROUGH LLP
                       100 S. Charles Street
                       Suite 1600
                       Baltimore, Maryland  21201
                       (444) 392-9400

                       HEATHER LAMBERT, ESQUIRE
                       NELSON MULLINS RILEY
                       & SCARBOROUGH LLP
                       1021 E Cary Street
                       Suite 2120
                       Richmond, Virginia  23219
                       (804) 533-2900

COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       401 Courthouse Square
                       Alexandria, Virginia  22314
                       S.AustinReporting@gmail.com

        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

P R O C E E D I N G S

THE DEPUTY CLERK:  Civil Action Number 1:25-cv-540, Yates v. FranConnect, LLC.

Will counsel please note their appearance for the record, first for the plaintiff.

MS. MILES:  Good morning, Your Honor.  Monique Miles on behalf of the plaintiff, Chris Yates.

THE COURT:  Good morning.  Ms. Miles, is your client here today?

MS. MILES:  He is not, Your Honor.

THE COURT:  All right.

MR. LONG:  Good morning, Your Honor.  Kraig Long from Nelson Mullins on behalf of the defendant, FranConnect.  I'm here with my colleagues, Heather Lambert and Sarah Steinberg.

THE COURT:  Good morning.

Ms. Miles, I want you to stay at the lectern.

Ms. Miles, you need to clarify something for the Court, because I'm quite concerned about this case and about, quite frankly, your conduct and Mr. Yates's conduct.

What is Mr. Yates's legal name?

MS. MILES:  His name is James Chris Yates.

THE COURT:  All right.

MS. MILES:  Yes.  Christopher.  I'm sorry, Your Honor.  James Christopher Yates.

THE COURT:  All right.  Did you help prepare all of

2

the attachments to your pleadings?

MS. MILES:  All of the attachments to my pleadings? You mean one through --

THE COURT:  The exhibits, such as the declaration of Mr. Yates.

MS. MILES:  Yes, Your Honor.

THE COURT:  I am extremely concerned that he has made two declarations in this litigation sworn to under the penalty of perjury.  Now, these are Docket Numbers 100-1 and 107-1. And they say:  "My full legal name is Chris Yates."  Now, that can't be true if what you've just told me his true name is James Christopher Yates.

Who prepared those declarations?

MS. MILES:  Your Honor, we prepared the declarations. He signed them, and I do see now that he did sign them as Chris Yates.

THE COURT:  But more than that, the statement is: "My full legal name is Chris Yates."  If you're telling me that his real legal name is James Yates or James Christopher Yates, I don't understand how those two affidavits, which are signed, there's a signature on both of them that would appear to be Chris Yates, how an attorney could permit those to be filed.

MS. MILES:  Your Honor, I'm so sorry, but I've known him as Chris Yates, but looking back at the signature on the document, it does say Chris Yates.  That was an oversight on my

3

behalf, Your Honor, because I go by Chris Yates with him, and he's been that to me ever since he came to my office.

THE COURT:  He filed the case as James Yates.

MS. MILES:  Yes, Your Honor.

THE COURT:  There are so many really bad things that you've done in this case.  I have real concern -- how long have you been practicing?

MS. MILES:  Your Honor, I've been practicing since 2009.

THE COURT:  How long have you been a member of this court?

MS. MILES:  Your Honor, I can't recall exactly the date, Your Honor, but as it pertains to this particular matter --

THE COURT:  No.  No.  How many years approximately have you been practicing in the E.D. Va?

MS. MILES:  I think I was licensed in -- gosh, Your Honor, I think it was 2012.

THE COURT:  There are some fundamental things you don't know that a federal practitioner should know.  Redaction.  This whole issue of filing sealed pleadings and understanding the relationship between something that is sealed and something that is filed publicly with the sealed materials redacted.  As you know, you asked to redact a good deal of information.  We allowed you to do that.  You then filed nothing publicly.  We

4

told you you had to file a redacted pleading, and all you filed was the caption and the word "redacted," which is not how you redact a pleading.  Then you had to call chambers and spend 15, 20 minutes talking with one of my law clerks who had to give you a tutorial on how to redact.  An experienced lawyer in this day and age when so much sensitive material gets filed should absolutely know how to redact.

The other problem we're having is apparently you don't know how to order a transcript.  You've been back and forth and your client's been back and forth with my court reporter about, you know, when a transcript is due, how it's ordered, et cetera.  An experienced attorney shouldn't be doing that.

And the other problem I have had in this litigation, and this is all, frankly, your conduct, is the inaccuracies. You may recall, for example, at the final pretrial, you mixed this case up with one involving IBM as the defendant.  And for a minute, the Court -- neither the Court nor defense counsel knew what you were talking about.  And then in this case, in your -- your opening briefs, you accused the defendant of never having filed a motion to dismiss.  They raised that in their opposition.  And in a footnote in your reply you said, oh, I made a mistake, there had been a motion to dismiss filed as to the original complaint but not to the amended complaint.  I mean, just constant inaccuracies, constant confusion of great

5

concern to the Court.

And I just also want to tell you that your redactions -- you have a motion pending, to some degree, that you wanted the Court to seal the defendant's -- defendant's pleading.  And I looked at what you wanted to seal and compared it to what you said in your motion for sealing, and we're talking about the defendant's reply in support of its motion to award attorney's fees.  This is Docket Number 105.  You asked the Court to seal everything from page 9 to the end of that document.  And the reasons you gave for that sealing -- sorry, pages 9 through 11.  Nine through 11.  So 9, 10 and 11.  And the reasons you gave for wanting to have those pages sealed was that the information contained private financial information of your client.

Well, first of all, most of it did not.  Page 9, for example, talks about websites that your client hosts for his business.  Well, that's public.  There's no basis for that to be sealed.

And what's also very interesting is you also asked, among other things, on page 11, there's a large paragraph there that talks about your -- I'm sorry, on -- yes, page 11 talks about the fact that you have personally been sanctioned by Judge Gardiner in the state court who imposed a sanction of over $240,000 because you had pursued meritless claims in that piece of litigation.  You wanted that sealed.  That had nothing

6

to do with your client's financial situation.  So there are terrible inaccuracies.  Terrible conduct in this case.

MS. MILES:  Your Honor, may I respond?

THE COURT:  So I am going to, among other things, issue an order today that puts you on notice that if there are any further filings in this court that have the types of significant inaccuracies that this case has had, it will be my recommendation that you be barred from practicing in this court, this federal court.

We cannot have this type of conduct from an attorney who practices here in terms of inaccuracies, misrepresentations and not understanding basic techniques of lawyering in this court.  So I had to put you on notice of this.

And then I want to get to the merits of the issues that are before us right now.

MS. MILES:  Your Honor, may I respond briefly?

THE COURT:  Go ahead.

MS. MILES:  As to the order that you granted for the motion to seal, the order said that it would be sealed in entirety.  To be honest, this is the first time that I've ever had that type of motion where it's sealed in entirety.  So when I redacted from the caption page to my signature page, that's what I thought you were requesting.  And so because of my not having done that before, that's why I put that redaction.  But when I called and spoke to the clerk, because I wanted to make

7

sure I was being very careful in how it was handled, I didn't want to make a mistake, she explained that even though it said "in entirety" in your order, that you only wanted the portions redacted.

And then as for the motion -- the -- when I confused the case with Chandler and IBM, that was regarding -- I was thinking in my head that we had had an EEOC mediation because you had asked counsel have you guys had any sort of mediation in this I think was your question.  And I was thinking about -- or I think it was a demand letter.  And I was thinking about how we had had a demand letter in the *Chandler* case, when, in fact, we had -- in this case not had a demand letter, but we had had an EEOC mediation where the parties had talked numbers.  So that's what I should have referred to.

THE COURT:  I thought in this case one of the issues was -- maybe I've mixed my cases up, that there was no EEOC mediation?

MS. MILES:  There was, Your Honor.

THE COURT:  Was there a mediation?

MS. MILES:  We had a mediation.

THE COURT:  All right.  All right.

MS. MILES:  Opposing counsel I think must have forgotten that, too, because when I raised it, he shook his head like that.  But then when I went back to my office and I looked again, I was like I'm sure we had a mediation.  We

8

actually indeed had a mediation, and it was unsuccessful, but there's no denying that it occurred.

THE COURT:  Well, speaking about mediation, the defendant has said in their papers that after the final pretrial in which I was, Number 1, commenting that I thought the case was very, very thin, it was hanging by a thread and suggested that you should seriously try to settle the case, is it correct that you doubled the number in your demand after that?

MS. MILES:  Your Honor, I believe the demand we initially had was prefiling.  So after we had filed, it did go up.  I don't remember if it was doubled or not because I don't have the numbers in front of me and I don't want to make a misrepresentation.  But we did get two offers from the EEOC after reviewing Mr. Yates's claims to mediate the case, which, as you know, they've got limited resources.  So the fact that they offered us mediation twice does say something about the -- what they perceived as initially the strength of his claims, I would say.

THE COURT:  Well, not necessarily.  They may also, as I think the -- didn't you go before a magistrate judge in this court?

MS. MILES:  We did.  We went before Judge Vaala, Your Honor.

THE COURT:  Right.  And didn't the defendant put

9

something on the table?

MS. MILES:  It was the original offer from when he was employed, Your Honor.  There wasn't any increase to that.  We previously rejected that offer.  I think they tried to put that forward before.

THE COURT:  But you know, again, when you've got a judge telling you this is a really thin case, most wise lawyers sit down and very diligently try to work it out.

In any case, the settlement issue is over.  We're at the point --

MS. MILES:  Yes.

THE COURT:  -- where I have granted summary judgment for the defendant, and the issues that are before the Court now are these follow-up issues about whether attorney's fees should be awarded to the defendant for having to defend this litigation, and also whether the defendant should receive the costs of litigation.  And so that's all we're going to be addressing today.  That's what's before the Court.

MS. MILES:  Thank you, Your Honor.

And when you -- I just briefly wanted to talk about you mentioned the public website deals with this persona, Your Honor.  My -- our response to that is we don't know if he's ever going to apply for a government job where he's going to be background checked.  We don't want any kind of record on --

THE COURT:  That's not an excuse.  And, frankly, your

10

client's going to have to live with those two affidavits that are not accurate.  Those are public statements made under penalty of perjury.  He could be prosecuted for making false statements to the Court.

MS. MILES:  Your Honor, can I request -- make a special request that we refile with his names James Yates?

THE COURT:  No.  Those are the documents that you have filed --

MS. MILES:  Okay.

THE COURT:  -- so we're moving on.

All right.  The motions that are before me right now, we're going to address those motions, the motions that the defendant has filed for attorney's fees.

Have a seat, Ms. Miles.

MS. MILES:  Thank you, Your Honor.

THE COURT:  All right.  Mr. Long, I've looked at that, and actually I'm going to deny the motion.  Change positions.  And I'm denying the motion for this reason.

MR. LONG:  Yes, Your Honor.

THE COURT:  When lawyers ask for attorney's fees, they have to submit the itemized -- their itemization of what they did.  What you did was insufficient.

MR. LONG:  Understood.

THE COURT:  All right.  However, because I am concerned about ongoing litigation costs, and I do know there's

11

been an appeal filed, and I am leaving the door open that if on appeal -- if the case does not get settled at the Fourth Circuit -- because I guarantee you the mediation people at the Fourth Circuit will try to get you all to settle.  If it doesn't settle at the Fourth Circuit and if you prevail at the Fourth Circuit, then you will have a right to request the attorney's fees involved in the litigation.  And the Fourth Circuit's practice these days is to send those issues back to the District Court.  If it's sent back to the District Court, I will seriously consider awarding you the fees involved in your appeal; all right?

MR. LONG:  Thank you, Your Honor.

THE COURT:  And that, therefore, Ms. Miles, is an alert or a warning to you that you better, in prosecuting your appeal, be 100 percent accurate and make sure you, as an officer of the court, have really looked at the law and the facts to make sure you have a meritorious basis to appeal.  Because, as I said, if the Fourth Circuit affirms this Court, then you need -- and your client need to be on notice that there will definitely be an award of attorney's fees; all right?

MR. LONG:  Your Honor, thank you for that.

And just with regard to not attaching our invoices, just because of the confidential nature, I assumed I would produce those at the Court's request at the hearing subsequent

12

to today, but I understand.

THE COURT:  All right.  But as to your request for costs --

MR. LONG:  Yes, Your Honor.

THE COURT:  -- you filed the bill of costs timely.

MR. LONG:  Yes.

THE COURT:  Again, you didn't have the attachments; however, on that one, I'm willing to look -- did you bring them with you?

MR. LONG:  I did, Your Honor.

THE COURT:  Did you bring a set for Ms. Miles?

MR. LONG:  I did, Your Honor.

THE COURT:  All right.  So these are standard deposition costs of the transcripts?

MR. LONG:  Yes, Your Honor.  Yes, Your Honor.

THE COURT:  There was nothing fancy, no 24-hour turnaround?  Nothing unusual or fancy?

MR. LONG:  Nothing there, Your Honor.

THE COURT:  Yeah.

MS. MILES:  Your Honor, if I might have a chance to respond before you issue your ruling, please.

THE COURT:  Go ahead.

MS. MILES:  Okay.  Your Honor, one of the issues that we raised in our pleadings was the cost --

THE COURT:  Well, you have to be at the lectern.

13

MS. MILES:  Oh, sorry, Your Honor.

Was the cost of the -- sorry -- the transcripts, specifically Mr. Yates's deposition, Your Honor.  There were multiple times, as documented in the depositions, where co-counsel -- I'm sorry, my friend across the aisle and his associate had engaged in really egregious behavior where there was sidebar chattering, Your Honor, to the point where I noted in the record the sidebar was occurring.  And it happened on multiple occasions, Your Honor, to the point where I started recording with my phone, but they would not stop talking during my examination of the witnesses, Your Honor.  And I've never had --

THE COURT:  If you have a problem in a deposition, what is the practice?  What do you do?

MS. MILES:  To call Your Honor.

THE COURT:  Not me.  You call the magistrate judge.

MS. MILES:  Oh, okay.  Well, we --

THE COURT:  You don't even know that.  That's how you solve that problem if it's that bad.

I don't find that as a sufficient excuse.  The deposition of a plaintiff is always a proper basis to recoup those costs, so I'm overruling that objection.

MS. MILES:  It was the length of the deposition.

THE COURT:  I'm overruling the objection.

MS. MILES:  Okay.

14

Stephanie Austin, RPR, CRR USDC/EDVA

THE COURT:  All right.  I'm going to grant the invoices based on those invoices.  And I'm assuming -- we'll double-check the math --

MR. LONG:  Yes.

THE COURT:  -- but I'm assuming that the numbers --

MR. LONG:  Spot on.

THE COURT:  -- amount up to what you requested.

MR. LONG:  Yes, Your Honor.

THE COURT:  So that aspect of your motion will be granted.

MR. LONG:  Thank you, Your Honor.

THE COURT:  All right.  And in terms of the plaintiff's motion to stay the award, I'm not granting that motion.  When a stay is requested, a bond can be posted, and that's the only basis upon which a stay can be justified.  So I'll give you ten days to file a bond if you don't want the order executable.  But we'll issue the order -- we'll do a slightly speaking order today that's going to deny the motion for attorney's fees, but will explain that that might not be the case if you have problems with the appellate record.  All right.

It's going to document a little bit of some of the comments I've made today, and it will deny the plaintiff's motion to stay the award pending appeal.  But I will stay the execution of that for ten days to allow the plaintiff to post a

15

bond.  If the bond is not posted within ten days, then you may proceed to collect on that; all right?

MR. LONG:  Thank you.

And, Your Honor, I just wanted to bring to your attention, we did have mediation before the Fourth Circuit just a few days ago, and plaintiff insisted --

THE COURT:  You've already been to the --

MR. LONG:  We've already been there.

THE COURT:  All right.

MR. LONG:  And plaintiff started off with that same insane number, as far as I'm concerned, and we didn't last long because it was just --

THE COURT:  All right.

MR. LONG:  So it was more of the same.  But just letting you know that we did have that just a few days ago.

THE COURT:  Well, it's too bad.  This case should settle.

MS. MILES:  Your Honor.

THE COURT:  I've ruled on everything, I believe.  What's left?

MS. MILES:  I think the thing I have on my notes is the motion to -- was it the motion to seal all -- it wasn't clear to me whether you're denying everything.

THE COURT:  I'm not sealing anything of the defendant's filing.

16

MS. MILES:  Okay.

THE COURT:  All right.  So that motion was denied. All right.

MS. MILES:  All right.  Thank you, Your Honor.

THE COURT:  That takes care of it.  Thank you.  We'll call the next case.

(Proceedings adjourned at 10:21 a.m.)

-----------------------------------

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

*Stephanie Austin*

Stephanie M. Austin, RPR, CRR

17